UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br><br>    Plaintiff,<br><br>v.<br><br>E. COTA, et al.,<br><br>    Defendants. | No. 2:19-cv-1423-EFB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in this action brought pursuant to 42 U.S.C. § 1983. In addition to filing a complaint, he has filed an application for leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915 and a motion to file a complaint in excess of the court's e-filing limit of 25 pages. ECF Nos. 6, 12.

    **I.    Application to Proceed In Forma Pauperis**

Plaintiff's application makes the showing required by 28 U.S.C. § 1915(a)(1) and (2). Accordingly, by separate order, the court directs the agency having custody of plaintiff to collect and forward the appropriate monthly payments for the filing fee as set forth in 28 U.S.C. § 1915(b)(1) and (2).

    **II.    Motion to Exceed E-Filing Page Limit**

Plaintiff filed his complaint by providing it to CDCR for e-filing with the court, pursuant to the March 1, 2016 Standing Order of the Eastern District of California ("In Re: Procedural

Rules for Electronic Submission of Prisoner Litigation Filed by Plaintiffs Incarcerated at Participating Penal Institutions"). ECF Nos. 1, 2-2. Under the Standing Order, complaints submitted thereunder may not exceed 25 pages. If a plaintiff needs more than 25 pages, "he or she must submit a motion demonstrating the grounds for the need to exceed the page limitation, along with the proposed complaint, to the Court for permission to exceed the page limit." Plaintiff's complaint is 35 pages long. He has submitted the motion required by the Standing Order, and the court will grant the motion and accept the complaint.

**III.  Screening**

**A.  Legal Standards**

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b).

A pro se plaintiff, like other litigants, must satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a)(2) "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554, 562-563 (2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). While the complaint must comply with the "short and plaint statement" requirements of Rule 8, its allegations must also include the specificity required by *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-57. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.
/////

Furthermore, a claim upon which the court can grant relief must have facial plausibility. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, *Erickson v. Pardus*, 551 U.S. 89 (2007), and construe the complaint in the light most favorable to the plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## B. Plaintiff's Allegations

Plaintiff's claims appear to revolve around the issuance of three Rules Violation Reports ("RVRs"; i.e., disciplinary charges) to him by various correctional officers while plaintiff was incarcerated at California State Prison, Sacramento. Plaintiff claims that these RVRs, issued by defendant correctional officers E. Cota, I. Salcedo, J. Hubbard, and D. Case, were all false. ECF No. 13.

The first RVR, issued by defendant Cota, arose from an incident in which plaintiff refused to relinquish Cota's handcuffs back to Cota after Cota escorted him from a mental health group to his cell. *Id.* at 4-10. Plaintiff claims that Cota and another correctional officer, Reilly (who is not named as a defendant), had subjected him to force[1] earlier in the escort and so he refused to return the handcuffs until he was given a "use of force video interview." *Id.* at 7-8. Also, plaintiff claims that he had told Cota and Reilly that he was suicidal "and should not be placed inside the cell but taken to be evaluated at once." *Id.* at 7. Plaintiff kept the handcuffs additionally to force the officers to bring mental health staff to his cell to evaluate him. *Id.* at 7-8.

Cota issued an RVR to plaintiff, presumably for refusing to give back the handcuffs. *Id.* at 8. According to plaintiff, Cota knew that he could not issue the RVR to plaintiff because plaintiff had reported that he was suicidal before refusing to return the cuffs. *Id.* To cover the illegitimacy of the RVR, Cota lied in responding to questions submitted by plaintiff prior to the hearing. *Id.* (Plaintiff does not provide the question or questions that Cota allegedly responded

---

[1] Plaintiff does not assert any claim based on this alleged use of force.

3

falsely to.). Plaintiff also alleges that defendant supervising officer Mccarvel, in answering questions related to the RVR, "downplayed the use of force" in order to cover for Cota and minimize his own failure to initiate a use-of-force interview. *Id.* at 9.

Plaintiff was found not guilty of the RVR charge by hearing officer R. Heise, whose stated reason was "in the interest of justice." *Id.* at 11. According to plaintiff, however, Heise's real reason for finding him not guilty was "the CDCR memorandum dated 9/11/15 which plaintiff had presented to him, pointing out that it precluded issuance of any RVR." *Id.* Heise did not state this "actual" reason because it would indicate that the RVR had been issued "in retaliation." *Id.* Plaintiff alleges that Heise's omission of the memorandum from "the evidence portion of the RVR" violated due process, but he has not named Heise as a defendant in this action. *Id.*

The second RVR, issued by defendant Salcedo, arose from an incident in which Salcedo asked plaintiff if he would accept a cellmate, and plaintiff responded that he had not yet "gone to the committee (ICC)" and thus could not be given a cellmate. *Id.* at 12. According to plaintiff, Salcedo had been sent by defendant J. Burnes, and Salcedo told plaintiff that he would tell Burnes what plaintiff had told him. *Id.*

Salcedo then issued plaintiff an RVR, with Burnes "signing off on it," despite both knowing that plaintiff had not gone to ICC yet and thus could not be changed from single-cell status. *Id.* In the RVR, Salcedo falsely stated that plaintiff had refused a cellmate because he didn't "know anybody," not because he had not gone to ICC yet. Plaintiff believed that Burnes had sent Salcedo to plaintiff's cell and signed off on the RVR to retaliate against plaintiff and "place him on appliance restriction via the RVR" because plaintiff had threatened to sue Burnes for not providing plaintiff with his television. *Id.* at 13-15.

Plaintiff contacted Salcedo later the same day and "had him sign a CDCR 22 form acknowledging that he had falsely accused plaintiff." *Id.* at 14. Nevertheless, Salcedo did not withdraw the RVR. *Id.*

Defendant Tumacder, a correctional supervisor, held the hearing on Salcedo's RVR on October 6, 2018 at plaintiff's cell door. *Id.* at 15. Tumacder told plaintiff he was finding him not guilty based on the form 22 signed by Salcedo. *Id.* at 15-16. However, when plaintiff was later

provided the hearing results, he discovered that Tumacder had intentionally omitted any mention of the form 22 "in line with the code of silence" to shield Salcedo. *Id.* at 16-17. Plaintiff asserts that this omission violated his procedural and substantive due process rights, constituted retaliation "for his asserting the right to have the 22 form considered in the hearing" and "for asserting his right to voice his concerns in Salcedo's actions." *Id.* at 17.

The third RVR, authored by defendant Case and "co-signed" by defendant Hubbard, arose from an incident in which plaintiff refused to exit his cell as ordered by Case and Hubbard. Plaintiff claims that Case and Hubbard issued the RVR "to justify having left plaintiff unattended and to retaliate against him for asserting the right to have them follow suicide prevention and response procedures of CCR § 3365 which uses mandatory language that created a liberty interest for due process attaching." *Id.* at 19. According to plaintiff, on September 15, 2018 he told "Psych-Tech" Selliers that he was suicidal, "a statement that mandates that he be seen and evaluated by a psychologist forthwith." *Id.* at 18-19. But plaintiff did not want to exit his cell because he was afraid of being assaulted by correctional officers, so he told Selliers and correctional officer Cooper that he would not leave the cell until the psychologist arrived, "an act that precluded C/Os using force to remove him until cleared to do so by a psychologist and warden, and further mandated that a C/O be posted at the cell to maintain visual, keep watch over him." *Id.* at 19.

Hubbard, Case, and other correctional officers came to plaintiff's cell, and Hubbard ordered plaintiff to place his hands out of the food port to be handcuffed. *Id.* at 20. Plaintiff refused, and Hubbard "opened the food port anyway and spoke to plaintiff aggressively." *Id.* After some verbal back-and-forth, plaintiff showed the officers "the Coleman Act's Use of Force mandates" and told them to follow procedure. *Id.* at 20-21. He told them that an officer was required to stay by the cell and "if you don't, I'll sue you." *Id.* at 21. Case accused plaintiff of "manipulating staff." *Id.* Plaintiff showed the officers "the CDCR memo dated 9/11/15 and told them that he could not be issued an RVR for refusing to exit his cell." *Id.* The officers left. *Id.* No psychologist came to evaluate plaintiff. *Id.* at 21-22. Selliers later told plaintiff that the officers had told the psychologist that plaintiff had said he was not really suicidal but only trying

5

to inconvenience them. *Id.* at 22. Plaintiff claims that this conduct by the officers violated his free speech rights because it prevented him from speaking to the psychologist. *Id.* at 23.

Case issued an RVR to plaintiff, co-signed by Hubbard and "signed off on" by Burnes. *Id.* Case and Hubbard falsely claimed that plaintiff had admitted to claiming to be suicidal to inconvenience them. Plaintiff concludes that the RVR "was issued in retaliation and in operation violated due process, and the First Amendment substantively." *Id.* at 22-23.

Plaintiff also claims that correctional officers M. Rodriguez and E. Garza falsified an "RVR Supplemental dated 9/20/18" (it is unclear which RVR this "supplemental" pertained to) to state that Garza had acted as investigative employee for plaintiff "where she did not and took no part in the process" and to state that plaintiff requested no witnesses (presumably at an upcoming hearing). *Id.* at 17-18. Plaintiff states that this conduct was retaliatory but provides no facts about what plaintiff believes these defendants were retaliating against him for. *Id.*

Plaintiff further alleges that Scott Kernan, former Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), and "John Doe," the current Secretary of CDCR[2], along with supervisors Burnes, S. Tumacder, and Mccarvel "maintained the unconstitutional custom and practices of allowing their supervisee(s), agent(s), and under-rank(s) to go unchecked and have encouraged the conduct to ensure a continued trend of the same conduct in the future," such conduct consisting of a "code of silence" and the issuing of "false RVRs to . . . cover for their fellow C/Os." *Id.* at 10. Under this "well documented pattern of conduct," correctional staff must "do what he/she can to shield a fellow CDCR employee from complaints, etc. that in any way could adversely impact another or place their employment in danger." *Id.*

### C. Analysis

On the above-summarized allegations, plaintiff premises six constitutional claims: (1) "violation of First Amendment (Substantive)"; (2) "violation of First Amendment, Retaliation"; (3) violation of substantive due process; (4) violation of procedural due process; (5) violation of

---

[2] The court notes that the identity of the current CDCR Secretary – Ralph Diaz – is publicly-available information. Cal. Dep't of Corr. and Rehab. Website, cdcr.ca.gov (last checked Sept. 28, 2019).

equal protection; and (5) cruel and unusual punishment. The court will address each claim in turn.

### 1. **First Amendment (Substantive)**

Plaintiff asserts this claim against defendants Cota, Burnes, Mccarvel, Tumacder, Garza, Rodriguez, and Hubbard for "reproaching [plaintiff] for exercising that right to free speech in each of the instances alleged," but effectively leaves it up to the court to determine which allegations against these defendants plaintiff believes violated his right to free speech. ECF No. 13 at 25. A plaintiff asserting a (non-retaliation) First Amendment claim must allege facts showing that: (1) the plaintiff was engaged in constitutionally protected free speech activity; (2) the defendant's actions caused an injury that would chill a person of ordinary firmness from continuing in that activity; and (3) inhibiting the plaintiff's constitutionally-protected speech was a substantial or motivating factor for the defendant's conduct. *Howard v. Rea*, No. CV 02-6255-BR, 2005 U.S. Dist. LEXIS 43798, at *17 (D. Or. June 27, 2005) (citing *Mendocino Envtl. Ctr. V. Mendocino Cnty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999)).

Plaintiff alleges that Cota filed a false RVR against him (of which plaintiff was found not guilty) and that Cota lied in responding to questions submitted by plaintiff before the RVR hearing. These facts do not support a free-standing First Amendment claim. *Holguin v. Wicks*, No. 1:16-cv-03460DAD-BAM (PC), 2017 U.S. Cist. LEXIS 80571, at *8-9 (E.D. Cal. May 24, 2017) ("Even the falsification of a disciplinary report does not state a stand-alone constitutional claim."); *Dawson v. Beard*, No. 1:15-cv-01867 DLB, 2016 U.S. Dist. LEXIS 38115, at *12-13 (E.D. Cal. Mar. 23, 2016) ("The issuance of a false RVR does not, in and of itself, support a claim under section 1983."). Because this claim fails as a matter of law and cannot be cured by additional or different factual allegations, the "substantive" First Amendment claim against defendant Cota should be dismissed without leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (leave to amend must be granted where the complaint's deficiencies can be cured by the allegation of other facts). Plaintiff's allegations against Mccarvel, Burnes, Garza, and Rodriguez are also based on alleged dishonesty in the creation of or prosecution of an RVR
/////

7

1 and thus also must be dismissed without leave to amend. To the extent that plaintiff's claim against Hubbard is based on plaintiff's claim that he lied in an RVR, it also fails.

Plaintiff also asserts that defendant Hubbard deprived him of his constitutional free speech rights by telling the psychologist that plaintiff did not really need to speak with her. Plaintiff has not stated facts showing that Hubbard did this in order to inhibit plaintiff's speech or that Hubbard's conduct would chill a person of ordinary firmness from speaking to the psychologist. The claim must therefore be dismissed with leave to amend.

Plaintiff alleges that Tumacder violated his First Amendment rights by not including Salcedo's Form 22 response in his statement of reasons for finding plaintiff not-guilty of Salcedo's RVR. The court fails to see how this conduct impacted plaintiff's speech, and plaintiff has not presented an explanation. Accordingly, the free speech claim against Tumacder should be dismissed with leave to amend.

### 2. **First Amendment (Retaliation)**

Plaintiff alleges that Cota, Burnes, Mccarvel, Tumacder, Garza, Rodriguez, Hubbard, Case, and Salcedo retaliated against him in violation of the First Amendment for asserting his due process rights and for "exercising the right to voice his sentiment on all things worldly and supernatural."

To state a claim for retaliation in violation of the First Amendment, a prisoner must allege facts supporting five elements: (1) that a state actor took some adverse action against him (2) because of (3) his protected conduct, (4) that such action chilled his exercise of his First Amendment rights, and (5) that the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The plaintiff need not demonstrate that his speech was actually inhibited or suppressed, but merely that the defendant's conduct was such as would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568-69. Conduct protected by the First Amendment includes communications that are "part of the grievance process." *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).

/////

Liberally construed, and solely for the limited purposes of screening under § 1915A, plaintiff has stated potentially cognizable retaliation claims against Cota, Burnes, Salcedo, Hubbard and Case.

Plaintiff has not stated facts that support a retaliation claim against Mccarvel, Tumacder, Garza, and Rodriguez. Plaintiff alleges that Mccarvel "downplayed the use of force" he claims was used against him by Cota in order to cover for Cota and to minimize his own failure to initiate a use-of-force interview. He does not allege that Mccarvel did this because of plaintiff's protected conduct and that it had a chilling effect on plaintiff's exercise of his First Amendment rights.

Plaintiff alleges that Tumacder did not include an item of evidence in his memorandum finding plaintiff "not guilty" of Salcedo's RVR in order to cover for Salcedo and did so in retaliation for plaintiff "asserting the right to have" the evidence considered in the hearing and "for asserting his right to voice his concerns in Salcedo's actions." But there is no allegation that Tumacder did not consider the evidence in the hearing or that the omission of the evidence from the "not guilty" finding in any way prevented plaintiff from voicing any concerns. On the facts alleged, the court fails to see what adverse action Tumacder took against plaintiff or how that action had a chilling effect on plaintiff's exercise of his First Amendment Rights.

Plaintiff alleges that defendants Garza and Rodriguez falsified an "RVR Supplemental" to retaliate against him but does not allege any facts from which a factfinder could conclude that either defendant was aware of any protected conduct by plaintiff, that they falsified the RVR Supplemental in response to that conduct, and that the falsification had a chilling effect on plaintiff's exercise of his First Amendment rights.

Accordingly, the retaliation claims against Mccarvel, Tumacder, Garza, and Rodriguez must be dismissed with leave to amend.

### 3. Substantive Due Process

In cases dealing with allegedly abusive action by a government official, "only the most egregious official conduct" violates the substantive component of the Due Process Clause. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Such conduct "shocks the conscience"

and "violates the decencies of civilized conduct," for example, the forced pumping of a suspect's stomach. *Id.* at 846-47. Behavior most likely to violate substantive due process is "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 849. Plaintiff alleges no facts against any defendant that are egregious enough to violate substantive due process. *See Saenz v. Spearman,* No. CV-1:09-00557-GSA-YNP (PC), 2009 U.S. Dist. LEXIS 70338 (E.D. Cal. July 29, 2009) ("The Due Process Clause does not provide a guarantee that Plaintiff will be free from fabricated accusations of disciplinary violations.") Thus, his substantive due process claims (against Cota, Burnes, Mccarvel, Tumacder, Garza, Rodriguez, Hubbard, Case, and Salcedo) must be dismissed with leave to amend.

### 4. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

While plaintiff lacks a right protected by the Due Process Clause to be free from fabricated disciplinary charges, he is entitled to certain procedural protections in the adjudication of disciplinary charges that result in the deprivation of a liberty interest. *Wolff*, 418 U.S. at 556. These protections are: (1) written notice of the charges; (2) at least 24 hours between notice and the hearing; (3) a statement by the factfinder of the evidence relied on and the reasons for the discipline; (4) the right to present evidence and witnesses, when such would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance if the prisoner is illiterate or the issues are legally complex. *Id.* at 563-71.

Plaintiff alleges that Cota deprived him of procedural due process by issuing him an RVR that Cota knew could not be issued and in "lying where he answered 'no' to the Question No. 1 of

the RVR Supplemental" (not provided in the complaint).  ECF No. 13 at 27.  These allegations do not make out a violation of plaintiff's procedural due process rights in connection with the RVR, listed above.  There is no claim in the complaint that plaintiff did not receive notice 24 hours before the hearing, a statement by the factfinder of the reasons for the discipline (plaintiff was not actually subjected to discipline at all), the opportunity to present evidence and witnesses, or legal assistance (if such assistance was required).

Plaintiff alleges that Mccarvel deprived him of procedural due process "via his having been involved in the incident [with Cota] and knowing that no RVR could be issued" yet allowing the RVR to be adjudicated.  Again, there is no due process right to be free from a false RVR, and plaintiff does not allege that any of the procedural protections mandated by the 14th Amendment were not provided to him in connection with Cota's RVR.

Plaintiff's procedural due process claims against Salcedo, Burnes, Rodriguez, Garza, Case, and Hubbard similarly hinge on his claim that these defendants lied in their assertions against him in disciplinary actions and thus also fail to state a procedural due process claim.

Plaintiff claims that Tumacder violated his procedural due process right to a statement by the factfinder of the evidence relied on because Tumacder did not include Salcedo's Form 22 in his statement finding plaintiff not guilty.  Due process does require a statement "as to the evidence relied upon and the reasons for the disciplinary action taken."  *Wolff*, 418 U.S. at 563.  This is to "protect the inmate against collateral consequences based on a misunderstanding of the nature" of the disciplinary proceeding and to provide a record that state officials, the public, and the courts can scrutinize, thereby encouraging prison administrators to act fairly.  *Id.* at 565.  But plaintiff alleges that no disciplinary action was taken against him – Tumacder found plaintiff not guilty of the disciplinary charge.  As there was no disciplinary action, plaintiff was not deprived of any interest protected by due process, and he was thus not entitled to the type of written statement required by *Wolff*.

Plaintiff's procedural due process claims must therefore be dismissed with leave to amend.

/////

11

### 5. Equal Protection

The Equal Protection Clause of the 14th Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." This command "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Generally, government action is presumed valid under the clause and will be sustained if it's differential treatment is rationally related to a legitimate state interest. *Id.* at 440. If such differential treatment is based on a certain suspect classifications, however, it will be sustained only if narrowly tailored to a compelling state interest. *Id.*

Plaintiff alleges broadly that Cota, Burnes, Mccarvel, Tumacder, Garza, Rodriguez, Hubbard, Case, and Salcedo deprived him of equal protection "via their actions of denying him the use, employment of, protection of, and or processes of those laws, procedures, and regulation(s) alleged, supra, and although allotted to each and every other prisoner in the state of California held in CDCR's custody, and similarly situated." ECF No. 13 at 30. The complaint contains no facts showing that plaintiff was singled out and treated disparately (or that such treatment was based on a suspect classification). Accordingly, the equal protection claim must be dismissed with leave to amend.

### 6. Cruel and Unusual Punishment

Lastly, plaintiff alleges that defendants Kernan, Doe (present CDCR Secretary), Burnes, Tumacder, and Mccarvel violated his Eighth Amendment right to be free from cruel and unusual punishment by allowing their subordinate officers (Cota, Garza, Rodriguez, Hubbard, Case, Salcedo, Burnes, Tumacder and Mccarvel) to violate due process and cover up for each other (which plaintiff refers to as the "Code of Silence").

It appears that plaintiff has mischaracterized this claim as one under the Eighth Amendment, as he has not alleged any Eighth Amendment violations against the subordinate defendants in this action. Rather, plaintiff seeks to hold these supervisory officers accountable for allowing the conduct of their inferior officers in allegedly depriving plaintiff of his rights under the First Amendment and the Due Process Clause. Liability may be imposed against these

12

supervisors only if each was personally involved in the alleged constitutional violation and there is a sufficient causal connection between the supervisor's conduct (or failure to act) and the violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

To the extent plaintiff has alleged facts showing the direct personal involvement of defendants Burnes, Tumacder, and Mccarvel in the alleged constitutional violations, the court has addressed those claims above. The complaint does not contain facts showing that these individuals, as supervisors, instituted or enforced a policy or custom leading to the violation of plaintiff's rights, or failed to train their officers to such an extent as to create a situation where plaintiff's rights were likely to be violated, or otherwise violated plaintiff's rights through their actions or failures to act. Instead, the complaint contains two-and-a-half pages of "naked assertions" and "labels and conclusions" without supporting facts. ECF No. 13 at 30-32 (e.g., defendants "knew or had reason to know that plaintiff would have his constitutional rights violated" but did not "act to correct the unconstitutional pattern of conduct," defendants "allowed their agents to be untrained, undisciplined and amenable to the Code of Silence"). Plaintiff must state *facts specific to his case* which, if true, show how these supervisors were personally involved in the constitutional deprivations he alleges.

Accordingly, plaintiff's claims against Kernan, Doe, Burnes, Tumacder, and Mccarvel for their conduct as supervisors of other defendants must be dismissed with leave to amend.

**IV.    Order and Recommendation**

Accordingly, it is ORDERED that:

1. Plaintiff's request to proceed in forma pauperis (ECF No. 6) is granted.
2. Plaintiff shall pay the statutory filing fee of $350. All payments shall be collected in accordance with the notice to the California Department of Corrections and Rehabilitation filed concurrently herewith.
3. Plaintiff's motion to exceed the e-filing page limit (ECF No. 12) is granted.
4. The Clerk is directed to randomly assign a United States District Judge to this case.

/////

/////

Further, it is RECOMMENDED that:

1. Plaintiff's "First Amendment (Substantive)" claims against defendants Cota, Burnes, Mccarvel, Garza, and Rodriguez be dismissed without leave to amend.
2. Plaintiff's claim that defendant Hubbard denied his substantive First Amendment rights by issuing a false RVR against plaintiff be dismissed without leave to amend.
3. Plaintiff's substantive First Amendment claims against Hubbard for preventing him from speaking with a psychologist and against Tumacder be dismissed with leave to amend.
4. Plaintiff's First Amendment retaliation claims against Mccarvel, Tumacder, Garza, and Rodriguez be dismissed with leave to amend.
5. Plaintiff's substantive due process, procedural due process, equal protection, and "deliberate indifference" claims be dismissed with leave to amend as to all defendants.
6. The district judge find that plaintiff has, for the limited purposes of § 1915A screening, stated potentially cognizable First Amendment retaliation claims against defendants Cota, Burnes, Hubbard, Case, and Salcedo.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 12, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE