# EXHIBIT 1

**TO REQUEST FOR JUDICIAL NOTICE OF MATTERS AND RECORDS IN SUPPORT OF DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11    ALLEN HAMMLER,                      1:20-cv-00630-DAD-GSA-PC

12                         Plaintiff,     **FINDINGS AND RECOMMENDATIONS,**
                                          **RECOMMENDING THAT THIS CASE BE**
13                                        **DISMISSED WITHOUT PREJUDICE FOR**
            v.                            **PLAINTIFF'S FAILURE TO EXHAUST**
14                                        **ADMINISTRATIVE REMEDIES**
      STATE OF CALIFORNIA, et al.,
15                                        **OBJECTIONS, IF ANY, DUE WITHIN**
                         Defendants.      **FOURTEEN DAYS**
16

17

18

19

20

21    **I.      BACKGROUND**

22            Allen Hammler ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis*

23    with this civil rights action pursuant to 42 U.S.C. § 1983.  On May 5, 2020, Plaintiff filed the

24    Complaint commencing this action.  (ECF No. 1.)   Plaintiff names ten defendants and  claims

25    that his rights to medical care under the Eighth Amendment were violated when defendants

26    stopped giving him his usual medication and offered him other medications instead.

27            On July 1, 2020, the court issued an order requiring Plaintiff to respond and show cause

28    why this case should not be dismissed without prejudice for his failure to exhaust administrative

remedies before filing suit pursuant to the requirements of the Prison Litigation Reform Act of 1995. (ECF No. 16.)  On July 19, 2020, Plaintiff filed a response to the order. (ECF No. 19.)  In his response Plaintiff does not discuss whether or not he exhausted his available remedies. Instead, Plaintiff argues that his case should be allowed to proceed because he is in imminent danger of serious harm.

## II.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all suits relating to prison life, Porter v. Nussle, 435 U.S. 516, 532, 122 S.Ct. 983 (2002). However, a prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. Albino v. Baca (Albino I), 697 F.3d 1023, 1031 (9th Cir. 2012).

If it appears clear on the face of the complaint that a plaintiff filed suit prematurely, the case may be dismissed.  Albino v. Baca (Albino II), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) (where failure to exhaust is clear from face of complaint, case is subject to dismissal for failure to state a claim under Rule 12(b)(6)); Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) ("A prisoner's concession to nonexhaustion is a valid ground for dismissal. . . .") (overruled on other grounds by Albino II, 747 F.3d at 1168-69); see also Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) ("Dismissal for failure to state a claim under § 1915A 'incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).'") (quoting Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012)).

///

## III.   DISCUSSION

The court previously found that Plaintiff's allegations in the Complaint satisfied the imminent danger exception to the three strikes bar under 28 U.S.C. § 1915(g), because "the prison's failure to provide [Plaintiff] with the correct medications caused 'a chemical imbalance[which] itself [is] a physical injury.'"  (ECF No. 9 at 2:9-15.)  However, "§ 1915(g) concerns only a threshold procedural question," (Id.), and Plaintiff is not excused from the exhaustion requirement because he qualified for the imminent danger exception to the "three strikes" rule,  Jensen v. Knowles, 621 F.Supp.2d 921, 927 (E.D. Cal. 2008).   Prisoners are required to exhaust the available administrative remedies prior to filing suit.  (Jones, 549 U.S. at 211.)  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth, 532 U.S. at 741, and the exhaustion requirement applies to all suits relating to prison life, Porter, 435 U.S. at 532.

Plaintiff's allegations in the Complaint describe events occurring at Corcoran State Prison in Corcoran, California, from approximately March 4, 2020 until April 10, 2020.  The Complaint was filed less than a month later on May 5, 2020, causing an inference that Plaintiff could not have exhausted his administrative remedies before filing this lawsuit.  Plaintiff's failure to exhaust was therefore evident on the face of the Complaint.  Plaintiff was ordered to show cause why this case should not be dismissed without prejudice for failure to exhaust his remedies.  Plaintiff did not offer any evidence that he exhausted his remedies or that the exhaustion process was not available to him before he filed suit.  Under these facts this case can be dismissed, without prejudice, for Plaintiff's failure to exhaust remedies prior to filing suit.

## IV.   CONCLUSION AND RECOMMENDATIONS

The court finds that Plaintiff failed to exhaust his available administrative remedies before filing this case.  Therefore, this case should be dismissed without prejudice.

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.   This case be dismissed without prejudice based on Plaintiff's failure to exhaust his available administrative remedies prior to filing suit; and

2.   The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  **Within fourteen (14) days** from the date of service of these findings and recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **July 16, 2020**                **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 2

**TO REQUEST FOR JUDICIAL NOTICE OF MATTERS AND RECORDS IN SUPPORT OF DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALLEN HAMMLER,

Plaintiff,

v.

STATE OF CALIFORNIA, et al.,

Defendants.

No. 1:20-cv-00630-DAD-GSA (PC)

ORDER ADOPTING FINDINGS AND RECOMMENDATIONS AND DISMISSING CASE WITHOUT PREJUDICE

(Doc. No. 20)

Plaintiff Allen Hammler is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On July 1, 2020, the assigned magistrate judge issued an order requiring plaintiff to show cause ("OSC") within thirty days why the case should not be dismissed due to plaintiff's failure to first exhaust administrative remedies before filing suit which was clear from the face of his complaint. (Doc. No. 16.) On July 19, 2020, plaintiff filed a response to the order. (Doc. No. 19.) In his response, plaintiff did not discuss whether he exhausted his available remedies. (*Id*.) On July 16, 2020, the assigned magistrate judge issued findings and recommendations, recommending that the case should be dismissed without prejudice because plaintiff failed to exhaust his available administrative remedies before filing this case. (Doc. No. 20 at 3.)

1      The findings and recommendations were served on plaintiff and contained notice that

2   objections thereto were to be filed within fourteen (14) days after service.  (*Id*. at 4.)  Plaintiff

3   filed timely objections to the findings and recommendations on July 27, 2020.  (Doc. No. 21.)

4   The court finds plaintiff's objections lack relevance.  Plaintiff claims "his honor is too

5   disconnected to the culture and political structure of the penal system inside these electrified

6   fences that he sees my effort to hold on to a usable state of mind as a sin against his bench."  (*Id*.

7   at 1.)  Plaintiff does not address his obvious failure to exhaust all administrative remedies prior to

8   filing suit as is required.

9      In accordance with the provisions of 28 U.S.C. § 636 (b)(1)(C), this court has conducted a

10   *de novo* review of the case.  Having carefully reviewed the entire file, including plaintiff's

11   objections, the court finds the findings and recommendations to be supported by the record and

12   proper analysis.

13      Accordingly,

14   1.   The findings and recommendations issued on July 16, 2020 (Doc. No. 20) are

15         adopted in full;

16   2.   This action is dismissed without prejudice due to plaintiff's failure to exhaust his

17         available administrative remedies prior to filing this action as is required; and

18   3.   The Clerk of the Court is directed to close this case.

19   IT IS SO ORDERED.

20   Dated:   **October 29, 2020**

21                                               UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

2

# EXHIBIT 3

**TO REQUEST FOR JUDICIAL NOTICE OF MATTERS AND RECORDS IN SUPPORT OF DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

1
2
3
4
5
6
7

8      **UNITED STATES DISTRICT COURT**

9      **SOUTHERN DISTRICT OF CALIFORNIA**

10

11     ALLEN HAMMLER,                          Case No.:  3:18-cv-1319-LAB-BLM
       CDCR #F-73072,
12                                             **ORDER DISMISSING CIVIL**
13                              Plaintiff,      **ACTION FOR FAILING TO**
                                               **STATE A CLAIM AND AS**
14                vs.                          **FRIVOLOUS PURSUANT**
                                               **TO 28 U.S.C. § 1915(e)(2)(B)**
15     D. HOUGH, Correctional Officer;         **AND 28 U.S.C. § 1915A(b)**
       J. NEVAREZ, C/O; ASBURY, C/O;
16     J. ALVAREZ, C/O; C/O NOLASCO,
17                              Defendants.

18

19          Allen Hammler ("Plaintiff"), currently incarcerated at California State Prison in

20    Corcoran, is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C.

21    § 1983. He has been granted leave to proceed *in forma pauperis* ("IFP") and an

22    opportunity to amend his pleading in order to state a claim upon which relief can be

23    granted. His Amended Complaint falls short, and includes different claims previously

24    alleged against the same parties—and already settled—in an entirely different suit.

25    Therefore, the Court dismisses his case.

26    **I.     Procedural History**

27          In his original Complaint, Hammler claimed Richard J. Donovan Correctional

28    Facility ("RJD") Officers Hough, Nevarez, Asbury, and Alvarez violated his First and

                                              1

1 Fourteenth Amendment rights while he was incarcerated there on October 16, 2016, by

2 failing to collect and process his outgoing legal mail at his request. *See* Compl., ECF No.

3 1 at 3-11. He alleged to have exhausted available administrative remedies before filing

4 suit via CDC 602 Inmate Parolee Appeal Log No. RJD-B-16-4400, which he attached as

5 an exhibit. *Id.* at 12, 16-19. His Complaint was verified under penalty of perjury, and he

6 sought $140,000 in general and punitive damages. *Id.* at 11, 14.

7 On September 21, 2018, the Court granted Hammler's IFP Motion, and *sua sponte*

8 dismissed his Complaint in its entirety for failing to state a claim. *See* ECF No. 3 at 3-15,

9 *citing* 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)). In a detailed Order, the Court

10 dismissed Hammler's mail collection, access to courts, retaliation, and equal protection

11 claims—all arising from the single October 16, 2016 incident.[1] *Id.* at 5-14. As is routine

12 in pro se prisoner cases, the Court provided Hammler notice of his pleading deficiencies,

13 and granted him 45 days leave in which to fix them. *Id.* at 6-14. Hammler was also

14 cautioned his Amended Complaint would supersede his original pleading, and that any

15 claim not re-alleged against any previously named Defendant would be considered

16 waived. *Id.* at 12.

17 After twice requesting and receiving extensions of time in which to amend, *see*

18 ECF Nos. 7, 10, Hammler filed his Amended Complaint ("FAC"). *See* ECF No. 11. His

19 FAC re-names Correctional Officers Hough, Nevarez, Asbury, and Alvarez as

20 Defendants, and it adds Correctional Officer Nolasco as a new party. *Id.* at 1-2. In

---

[1] The Court also took judicial notice of six separate but sequential civil rights actions filed by Hammler in the Southern District of California over the course of 2017 and 2018— almost all involving claims of retaliation and excessive force at RJD. *See* ECF No. 3 at 2 n.1. The Court also noted some of the Defendants in those cases overlapped, but none appeared to include the same mail-processing claims alleged in the original Complaint Plaintiff filed in this case. *Id.* Hammler has previously been warned that he may not litigate duplicative claims in successive civil actions. *Id.* (citing *Hammler v. Hernandez, et al.*, S.D. Cal. Civil Case No. 3:18-cv-00259-CAB-MDD (ECF No. 5 at 5 n.2); *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995)).

addition, Plaintiff's FAC includes Eighth Amendment excessive force allegations arising on October 20, 2016—four days after the incident alleged in his original Complaint, but also involving Defendants Hough, Nevarez, and Alvarez, and including another Correctional Officer (Soto) and a Correctional Sergeant (Skelton)—neither of whom is named as a Defendant in this case. *Id.* at 18-31.

## II.   Screening of Amended Complaint

As Plaintiff now knows, the Prison Litigation Reform Act ("PLRA") requires review of all complaints filed by persons proceeding IFP, as well as those filed by persons, like him, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," at the time of filing "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under the PLRA, the Court must *sua sponte* dismiss complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which seek damages from defendants who are immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

### A.   Standard of Review

"The purpose of § 1915[] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc*., 689 F.3d 680, 681 (7th Cir. 2012)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *accord Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

3

Every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The "mere possibility of misconduct" falls short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

While a plaintiff's factual allegations are taken as true, courts "are not required to indulge in unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), but they may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

B.  Allegations in Amended Complaint

In general, the allegations in Hammler's FAC regarding the non-collection of his legal mail on October 16, 2016, while a bit more drawn out, are not materially different than those in his original Complaint. *Compare* Compl., ECF No. 1 at 3-11, *with* FAC, ECF No. 11 at 3-16.

Hammler claims, as he did previously, that on October 16, 2016, at approximately 5 p.m., he first "made contact" with Correctional Officer Hough and informed him that
///

4

1    he needed tape[2] and wished to get his mail processing "out of the way" instead of waiting

2    until the 9:30 p.m. shift change when he felt "rushed" by Hough and others who were

3    "trying to … go home" and "get off work." *See* FAC, ECF No. 11 at 6-7. Hammler

4    claims he had seen how "troublesome" it was to obtain tape for his legal mail four days

5    before, when Officer Nolasco "made the excuse" that he could not process the mail

6    without it, and told him there "was no tape left." *Id.* at 4. On that day, October 12, 2016,

7    Hammler "ha[d] to yell for Defendant Alvarez" to process his mail instead. *Id.* at 5.

8       On October 16, 2016, Hammler claims Hough first left claiming he was going to

9    get tape, but he returned 30 minutes later at 5:30 p.m., announcing there was none. *Id.* at

10    7. Hammler "told Hough that he had to go find some because he (Plaintiff) had a deadline

11    to submit legal documents and by law the CDCR had to provide things needed to enable

12    him to meet the deadline."[3] *Id.* Hammler contends Hough commented that he "didn't

13    'have' to do [any]thing, then left." *Id.*

14       At 6 p.m., Hammler again "caught Hough when he was passing by his cell and

15    asked if he had found some tape." *Id.* at 7-8. Hough replied: "I told you there's no more

16    tape." *Id.* at 8. So, Plaintiff "pull[ed] tape" off one his books, and demanded Hough

17    process his mail "right then and there." *Id.* Hough refused and directed Hammler to give

18    his mail to "who[m]ever picks it up later." *Id.*

19       During an 8 p.m. security walk or "pipe check," Hammler claims Officer Nevarez

20    passed him by, but promised to come back. *Id.* at 9. He did not, however, and when

21

22

---

23    [2] Hammler does not explain why his legal mail required tape, but the Court presumes, as it

24    did in its September 18, 2018 Order, that it qualified as "Outgoing Confidential Mail" which must be "sealed" after inspection for prohibited material and in his presence. *See*

25    ECF No. 3 at 8 n.4 (citing Cal. Code Regs., tit. 15 § 3142(d)).

26    [3] Plaintiff does not identify the date of his deadline or the court that set it; nor does he

27    describe the nature of the legal proceeding or the content of the submission that was allegedly due.

28

3:18-cv-1319-LAB-BLM

Hammler yelled: "Come get my mail!" Nevarez responded: "Next round." *Id.* at 10. Hough conducted the next round at 8:30 p.m., and Hammler again asked Hough to process his mail. *Id.* Hough replied: "They already did mail pick-up!" even though Hammler claims he "already knew that Nevarez had not collected [it]." *Id.*

Nevertheless, Hammler persisted, asking, "Are ya'll gonna let me get my legal mail out?" Hough replied, "Maybe," and kept walking. *Id.* at 11. When Hammler yelled "What do you mean, Maybe[?] You don't have a choice!" Hough replied, "I thought you needed tape and we don't have any." *Id.*

Hammler continued to stand in his door until he saw Officer Alvarez enter the building and so he yelled for him. *Id.* When Alvarez approached 20 minutes later, Hammler complained that he was "tired of having to stand on his cell door for an hour and a half, after everyone else's mail has already been collected." *Id.* at 12. He then attempted to give Alvarez his mail, but Alvarez refused and told him he would "send someone to collect it, right now, stand by." *Id.* Alvarez then left with the other officers at the 10:00 p.m. shift change however, and "never follow[ed] up." *Id.* at 13.

On the next day, October 17, 2016, after Hammler attended a Mental Health Group meeting, and while he was being escorted back to his cell, he attempted to speak with the on duty sergeant about his "legal work." *Id.* The sergeant replied: "Later" and Hammler was returned to his cell. *Id.* at 13. Once there, however, Hammler refused to surrender his cuffs to Correctional Officer Magallanes, and demanded to speak with a sergeant first.[4] *Id.* at 13-14.

An unidentified sergeant responded "right away" and Hammler explained he needed to take "drastic measures" to get his mail out. *Id.* The sergeant directed Hammler

---

[4]  Correctional Officer A. Magallanes is a Defendant in another of Hammler's pending cases, but he is not named as a party to this one. *See Hammler v. Hernandez, et al.,* S.D. Cal. Civil Case No. 3:18-cv-00259-CAB-MDD (ECF No. 25).

to surrender the cuffs, said he would grant him access to the law library, and would "sign and forward his legal mail from the night before." *Id.* Hammler "did not believe him and refused knowing that the next step would be for a higher ranking C/O to come and talk to him," but once the sergeant left, Hammler gave his legal mail to Magallanes to sign. *Id.* After this was done, Hammler surrendered the cuffs. *Id.*

Two days later, on October 19, 2016, Hammler again yelled to Nevarez: "I got legal mail!" after he "attempted to walk by [his] cell" and failed to stop and collect "a large yellow piece of paper protruding from his door … with 'Legal Mail' written on it in big bold print." *Id.* at 17. Hammler claims Nevarez said, "I'll come back for yours," and "snap[ped]" "I don't gotta explain myself to you," in response to Hammler's complaints. *Id.*

On the next day, October 20, 2016, Hammler attempted to send his mail out from the day before, but Nevarez again replied that he would "Be back." *Id.* at 18. Hammler assumed Nevarez would "never return," and "in anger continued to yell … 'Come and get my mail!'" until he "became ill." *Id.* at 8-19. He then reported he had chest pain to Correctional Officer Soto, while he was doing another pipe check. *Id.* at 19.  Hammler watched as Soto "went directly to the RN's office," returned, laughed, and said "They're gonna come get you." *Id.* Hammler "perceive[ed] that Soto and the others were thinking that he was not really ill but pulling a stunt to get them to accept his mail," so he continued to stand in his door and exclaimed, "Look man, I'm not even tripp'n on the mail no more, I'm serious, I'm in pain." *Id.* at 20.

In response, Officers Soto, Alvarez, and Nevarez arrived at his cell, cuffed him with a "long chain," forcibly removed him from his cell, and allegedly used "brute force" while doing so. *Id.* at 21-23.

The remainder of the factual allegations in Hammler's FAC, and which were not included in his original Complaint in this case, all relate to the October 20, 2016 excessive force incident, and are copied—virtually word for word—from the Complaint he filed on July 27, 2017 in *Hammler v. Alvarez, et al.*, S.D. Cal. Civil Case No. 3:17-cv-

1  01533-WVG, against Defendants Nevarez, Hough, Soto, and Alvarez. *Compare* FAC,

2  ECF No. 11 in 18-cv-01319 at 19-30, ¶¶ 32-55, *with* Compl., ECF No. 1 at 1-14, ¶¶ 2-25

3  in 18-cv-01533-WVG. That case settled on July 24, 2018, and Defendants have satisfied

4  the monetary terms of the settlement agreement. *See* S.D. Cal. Civil Case No.18-cv-

5  01533-WVG, ECF Nos. 31, 34, 42.

6       C.   <u>Discussion</u>

7          *1.   October 12 and 16, 2016 Mail Incidents*

8     As he did in its original Complaint, Plaintiff's FAC claims Defendants Hough,

9  Nevarez, and Alvarez violated his First Amendment rights to "free speech and

10  expression," and retaliated against him on October 16, 2016, by refusing to process his

11  legal mail upon demand, and thereby delaying its processing over one night. *See* ECF No.

12  11 at 6-16. He adds similar mail processing allegations against Defendant Nolasco arising

13  on October 12, 2016—but he also admits that his mail was nevertheless accepted by

14  Defendant Alvarez later that same day. *Id.* at 3-5. Hammler also contends Hough,

15  Nevarez, and Alvarez denied him equal protection on October 16, 2016 because they

16  collected mail from other inmates in his unit. *Id.* at 33. He includes no factual allegations

17  as to Defendant Asbury whatsoever.

18     As pleaded, Hammler's FAC still fails to state any plausible First or Fourteenth

19  Amendment claim for relief as to his mail. First, while he enjoys "a First Amendment

20  right to send and receive mail," prison regulations or policies may curtail that right if they

21  "are reasonably related to legitimate penological interests." *Nordstrom v. Ryan*, 856 F.3d

22  1265, 1272 (9th Cir. 2017) (citing *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per

23  curiam) (internal quotation marks omitted)). Legitimate penological interests that justify

24  regulation of outgoing legal mail include "the prevention of criminal activity and the

25  maintenance of prison security." *Nordstrom*, 856 F.3d at 1272 (citing *O'Keefe v. Van

26  Boening*, 82 F.3d 322, 326 (9th Cir. 1996)).

27     Title 15 of the California Code of Regulations § 3130, et seq., set out the rules

28  correctional officers must follow to "provide [for] … the orderly processing of inmate

mail," and they "give direction to staff, inmates, and their correspondents concerning facility mail requirements." *See id.*; *K'Napp v. Adams*, No. 1:06-cv-01701-LJO-GSA-PC, 2015 WL 5138237 at *17 (E.D. Cal. Sept. 1, 2015) (finding that § 3130 and CDCR's mail processing regulations "further[] the substantial governmental interest of internal order."). As noted above, those regulations further provide that the type of "outgoing confidential mail" Hammler wished to process both on October 12, 2016, and October 16, 2016, required special handling, *i.e.*, individualized inspection for contraband while unsealed, followed by subsequent sealing (presumedly with the tape Hammler admits Defendants told him was not currently available), and the signature and badge number of correctional staff designated to perform that task. *See* Cal. Code Regs., tit. 15 § 3142(d). Hammler fails to allege these regulations lack any legitimate penological purpose. *Nordstrom*, 856 F.3d at 1272.

And while allegations of stolen mail or delayed delivery for "an inordinate amount of time" have been held sufficient to state a claim for violation of the First Amendment, *see e.g., Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996), the Ninth Circuit and other Courts of Appeal have found temporary and or isolated instances of delay, like those alleged to have occurred in Hammler's case, do not offend any First Amendment principles. *See Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (as amended); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *see also Furnace v. Cope*, No. 1:16-CV-00420-LJO-BAM PC, 2018 WL 2198716, at *7 (E.D. Cal. May 14, 2018) (recommending sua sponte dismissal of prisoner's outgoing mail claims pursuant to 28 U.S.C. § 1915A(b)(1), (2) and 28 U.S.C. § 1915(e)(2)(B)(ii)).

Indeed, as the Court noted in its September 21, 2018 Order, it has uncovered no case in which a one-day delay in collecting a prisoner's outgoing legal mail has been held sufficient to violate the First Amendment. *See e.g., Crofton,* 170 F.3d at 961 (finding a "temporary delay in the delivery of Crofton's publications, resulting from the prison official's security inspection, does not violate his First Amendment rights."); *Sizemore v.*

*Williford,* 829 F.2d 608, 610 (7th Cir. 1987) (emphasizing that "merely alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support ... a cause of action grounded upon the First Amendment"); *Young v. Tampkins*, No. CV 16-cv-07455-JFW-RAO, 2017 WL 2389974, at *5 (C.D. Cal. May 12, 2017) ("A temporary delay or isolated incident of mail interference is usually insufficient to establish a constitutional violation."), *report and recommendation adopted*, 2017 WL 2381270 (C.D. Cal. June 1, 2017).

Hammler also still fails to claim any Defendant read, censored, opened, or inspected his legal mail outside his presence, *see e.g., Hayes v. Idaho Corr. Ctr.,* 849 F.3d 1204, 1211-13 (9th Cir. 2017), and he does not claim that he was unable to get any particular item to the post. In fact, he continues to admit his legal mail was collected in his presence both on October 12, 2016—by Defendant Alvarez, and on October 17, 2016—by Officer Magallanes. *See* FAC, ECF No. 11 at 5, 14. Defendants' refusal or inability to do so immediately, and at Hammler's repeated bidding—regardless of any other legitimate correctional goal or need for institutional order—does not violate the First Amendment as a matter of law. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (identifying security, order, and rehabilitation as governmental interests sufficient to justify restrictions on outgoing prisoner mail); *see also Avila v. Brown*, No. 1:17-CV-01328-LJO-BAM PC, 2018 WL 1806624, at *2 (E.D. Cal. Apr. 17, 2018) (noting that prisoners "do not have a constitutional right to unlimited free access to the mail," and dismissing allegations that the failure to provide prisoners with "free pen fillers every day" violated the First Amendment).

Liberally construed, the Court also continues to find Hammler's mail problems do not allege a plausible claim for relief based on his right of access to the courts. *See Lewis v. Casey,* 518 U.S. 343, 346 (1996). Specifically, his FAC, like his original Complaint fails to allege he was "actual[ly] injur[ed]." *Id.* at 351-53; *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to

10

present a claim." *Lewis*, 518 U.S. at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). The failure to allege an actual injury is "fatal" to any access to court violation. *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

Moreover, Hammler fails to allege the loss of a "non-frivolous" or "arguable" underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The nature and description of that claim must be set forth in his FAC "as if it were being independently pursued." *Id.* at 417. Here, however, Hammler simply claims he had a "deadline," and repeatedly refers to his "legal mail" and "legal work," *see* FAC, ECF No. 7, 9, 11 at 11, 13, 14, 17—but nowhere does he identify the "non-frivolous" nature of his underlying case, or the court or time in which the documents included in his "legal mail" were allegedly due. *Christopher,* 536 U.S. at 417. This is also a necessary pleading requirement because the constitution does not guarantee inmates the wherewithal to file any and every type of legal claim—it requires only that they be provided with the tools to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement. *Lewis*, 518 U.S. at 355; *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355.

With respect to the mail processing claims alleged in his FAC, Hammler also continues to fail to allege a plausible claim for retaliation. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). But a retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Hammler must allege Defendants retaliated against him based on constitutionally protected conduct. *Watison*, 668 F.3d at 1114. Next, he must allege

1    Defendants took adverse action against him. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th
2    Cir. 2005). Third, he must allege a causal connection between that adverse action and his
3    protected conduct. *Watison*, 668 F.3d at 1114. Fourth, Hammler must allege the
4    "official's acts would chill or silence a person of ordinary firmness from future First
5    Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis
6    omitted). Fifth, he must allege "that the prison authorities' retaliatory action did not
7    advance legitimate goals of the correctional institution...." *Rizzo*, 778 F.2d at 532;
8    *Watison*, 668 F.3d at 1114-15.

9         As was true of his original Complaint, Hammler's FAC alleges facts sufficient to
10   satisfy the first two elements of a retaliation claim. *Watison*, 668 F.3d at 1114. The right
11   to access to the court is undoubtedly "protected conduct." *Id.*; *see also Schroeder v.*
12   *McDonald,* 55 F.3d 454, 461 (9th Cir. 1995) (officials may not "punish the prisoner for
13   exercising his First Amendment right to pursue civil rights litigation in the courts.")
14   (citing *Rizzo*, 778 F.2d at 532). And a correctional officer's refusal to accept an inmate's
15   legal mail is sufficiently "adverse" to any claim an inmate might seek to pursue in a court
16   of law. *See e.g., Uribe v. McKesson*, No. 08CV01285 DMS NLS, 2011 WL 9640, at *13
17   (E.D. Cal. Jan. 3, 2011) (finding prisoner's retaliation claims of having his legal mail
18   rejected for processing "because it was not time for legal mail" was a sufficiently
19   "adverse punitive response[].").

20        However, Hammler's FAC fails to plead facts sufficient to satisfy the remaining
21   elements of a retaliation claim. Specifically, he fails to allege that any Defendant refused
22   to process his mail either on October 12, 2016, or on October 16, 2016, between the
23   hours of 6 p.m. and 10 p.m., *because* he sought to exercise his constitutional rights.
24   *Watison*, 668 F.3d at 1114; *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th
25   Cir. 1989) (retaliation claims requires a showing that Plaintiff's protected conduct was
26   "the 'substantial' or 'motivating' factor behind the defendant's conduct."). In fact,
27   Plaintiff continues to admit he told Defendant Hough he "needed tape" on October 16,
28   2016, before his legal mail could be processed. *See* FAC, ECF No. 11 at 7.

Hammler further fails to allege facts which plausibly show how or why a one-day delay in the processing of mail "would chill or silence a person of ordinary firmness from future First Amendment activities," *Rhodes*, 408 F.3d at 568, and as currently pleaded, his FAC still fails to claim that he "suffered some other harm," *Brodheim*, 584 F.3d at 1269, that was "more than minimal." *Rhodes*, 408 F.3d at 568 n.11. Hammler's FAC also fails to allege Defendants' one-day delay in collecting his mail "failed to advance a legitimate goal of the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15. Indeed, as the Court has noted, Cal. Code Regs., tit. 15 § 3130 and § 3142 provide for the "orderly processing" of an inmate's outgoing confidential mail, and Hammler offers no facts to plausibly suggest how those regulations are "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution." *Franklin v. Murphy*, 745 F.2d 1221, 1230 (9th Cir. 1984); *Watison*, 668 F.3d at 1114-15; *K'Napp*, 2015 WL 5138237 at *17 (finding CDCR's mail regulations "further[] the substantial governmental interest of governmental order.").

Finally, Hammler continues to complain that other prisoners inside the unit were allowed to forward their legal mail on October 16, 2016, and that he was subject to "different treatment." *See* FAC at 33. But this type of conclusory allegation fails to state a plausible claim for relief under the Fourteenth Amendment. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or a "formulaic recitation of the elements of a cause of action will not do.'") (citation omitted).

An equal protection claim is pleaded by alleging that a defendant intentionally discriminated against the plaintiff based on his membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or by alleging facts sufficient to plausibly show that similarly situated individuals were intentionally treated differently absent a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

1   Hammler still does not allege to be a member of any protected class. *Serrano*, 345

2 F.3d at 1082. And while he uses the phrase "similarly situated," *see* FAC ECF No. 11 at

3 11 at 33, he includes no factual content to plausibly show how other prisoners in his unit

4 on October 12, 2016, or October 16, 2016, were treated differently or how any disparate

5 treatment lacked legitimate purpose. *See McCollum v. Cal. Dept. of Corr. and Rehab.*,

6 647 F.3d 870, 880-81 (9th Cir. 2011) (Equal Protection claims require a plaintiff to

7 "articulate which [other persons] were similarly situated or how he is similar to these

8 [persons]."); *see also Bell Atlantic Corp.*, 550 U.S. at 553-56 & n.3 ("labels and

9 conclusions" are insufficient to state a claim for relief).

10   Thus, for all these reasons, the mail processing allegations in Hammler's FAC, like

11 those in his original Complaint, must be dismissed sua sponte and in their entirety

12 because they continue to fail to state any First or Fourteenth Amendment claim upon

13 which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C.

14 § 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.

15     *2. October 20, 2016 Excessive Force Claims*

16   The remainder of the factual allegations in Hammler's FAC—all relating to an

17 October 20, 2016 excessive force incident, and which were also alleged in *Hammler v.*

18 *Alvarez, et al.*, S.D. Cal. Civil Case No. 3:17-cv-01533-WVG, against Defendants

19 Nevarez, Hough, and Alvarez—are also dismissed from this action as frivolous pursuant

20 to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1). *Compare* FAC, ECF No. 11 in 18-cv-

21 01319 at 19-30, ¶¶ 32-55, *with* Compl., ECF No. 1 at 1-14, ¶¶ 2-25 in 18-cv-01533-

22 WVG.

23   As is his wont, Hammler repeats and attempts to revive allegations in this case

24 against Defendants Nevarez, Hough, and Alvarez that have been previously raised,

25 litigated, and made subject to a settlement agreement in another of his many cases:

26 *Hammler v. Alvarez*, S.D. Cal. Civil Case No. 3:18-cv-01533-WVG (ECF Nos. 31, 34,

27 42). While he knows he may not file multiple suits that "'that merely repeat[] pending or

28 previously litigated claims,'" *Cato*, 70 F.3d at 1105 n.2 (applying 28 U.S.C. § 1915(d)

(re-codified at 28 U.S.C. §§ 1915(e)(2)(B)(i), 1915A(b)(1)), he tries anyway. *See also Denton v. Hernandez*, 504 U.S. 25, 30 (1992) (recognizing Congress's concern that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits") (quotation omitted); *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (duplicative or repetitious litigation of virtually identical causes of action is subject to dismissal under 28 U.S.C. § 1915 as malicious); *Van Meter v. Morgan*, 518 F.2d 366 (8th Cir. 1975) (dismissal of complaint as frivolous is not an abuse of discretion where plaintiff has filed other similar complaints); *Ortega v. Ritchie*, No. 18-CV-02944-HSG (PR), 2018 WL 3744154, at *2 (N.D. Cal. Aug. 7, 2018) (same); *see also Hammler v. Hernandez*, S.D. Cal. Civil Case No. 3:18-cv-00259-CAB-MDD (ECF No. 5 at 5 n.2) ("Plaintiff is hereby cautioned that he may not raise duplicative claims in separate actions.") (quoting *Cato*, 70 F.3d at 1105 n.2)); *Hammler v. Kernan, et al.*, S.D. Cal. Civil Case No. 3:18-cv-01170-DMS-NLS (ECF No. 11 at 3-4) (dismissing as duplicative claims plaintiff was "already pursing in the Eastern District of California" in *Hammler v. Director of CDCR, et al.*, E.D. Civil Case No. 2:17-cv-01949-MCE-DB pursuant to 28 U.S.C. § 1915(e)(2) & § 1915A(b)).

In fact, due to "frivolous or harassing nature of [his] filings," the Honorable U.S. Magistrate Judge William V. Gallo has recommended that Hammler be subject to a pre-filing review order in the Southern District of California. *See Hammler v. Alvarez*, No. 18-CV-326-AJB (WVG), 2019 WL 549627, at *9 (S.D. Cal. Feb. 12, 2019) (Report and Recommendation to grant Defendants' request for an order declaring Hammler a vexatious litigant subject to a prefiling order).

D.    <u>Leave to Amend</u>

Hammler has already been provided a short and plain statement of his First and Fourteenth Amendment pleading deficiencies, and was given an opportunity to fix his pleading. His FAC fails to do that, and it further attempts to re-generate duplicative claims litigated in a prior action against the same parties. *See Lopez*, 203 F.3d at 1127 n.8

1  (noting that if a claim is classified as frivolous, "there is by definition no merit to the
2  underlying action and so no reason to grant leave to amend.").

3        Therefore, the Court denies Hammler further leave to amend as futile. *See*
4  *Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of
5  amendment can, by itself, justify the denial of ... leave to amend.'") (quoting *Bonin v.*
6  *Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)); *Zucco Partners, LLC v. Digimarc Corp.*,
7  552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted
8  leave to amend and has subsequently failed to add the requisite particularity to its claims,
9  [t]he district court's discretion to deny leave to amend is particularly broad." (internal
10  quotation marks omitted) (second alteration in original)).

11  **III.   Conclusion and Order**

12        Accordingly, and for all the reasons explained, the Court:

13      1)   **DISMISSES** this civil action without further leave to amend for failure to
14  state a claim upon which § 1983 relief can be granted and as frivolous pursuant to 28
15  U.S.C. § 1915(e)(2)(B)(i), (ii) and § 1915A(b)(1).

16      2)   **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant
17  to 28 U.S.C. § 1915(a)(3), and

18      3)   **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and to
19  close the file.

20        **IT IS SO ORDERED**.

21

22  Dated:  May 23, 2019

23                           Hon. Larry Alan Burns
24                           Chief United States District Judge

25

26

27

28

# EXHIBIT 4

**TO REQUEST FOR JUDICIAL NOTICE OF MATTERS AND RECORDS IN SUPPORT OF DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

# FILED

JAN 9 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALLEN HAMMLER, | No.   19-55732 |
| Plaintiff-Appellant, | D.C. No. 3:18-cv-01319-LAB-BLM |
| v. | Southern District of California, San Diego |
| D. HOUGH, Correctional Officer; et al., | ORDER |
| Defendants-Appellees. | |

Before:     CALLAHAN, NGUYEN, and HURWITZ, Circuit Judges.

The district court certified that this appeal is not taken in good faith.  *See* 28 U.S.C. § 1915(a).  On July 1, 2019, this court ordered appellant to explain in writing why this appeal should not be dismissed as frivolous.  *See* 28 U.S.C. § 1915(e)(2) (court shall dismiss case at any time, if court determines it is frivolous or malicious).

Upon a review of the record and response to the July 1, 2019 order, we conclude this appeal is frivolous.  We therefore deny appellant's motion to proceed in forma pauperis (Docket Entry No. 7) and dismiss this appeal as frivolous, pursuant to 28 U.S.C. § 1915(e)(2).

**DISMISSED.**

# EXHIBIT 5

**TO REQUEST FOR JUDICIAL NOTICE OF MATTERS AND RECORDS IN SUPPORT OF DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN HAMMLER,<br>CDCR No. F-73072,<br><br>                              Plaintiff,<br><br>           vs.<br><br><br>SCOTT KERNAN; DANIEL PARAMO;<br>P. CORTEZ; J. DIES; NEVAREZ,<br>                              Defendants. | Case No.:  3:18-cv-01170-DMS-NLS<br><br>**ORDER DISMISSING FIRST<br>AMENDED COMPLAINT FOR<br>FAILURE TO STATE A CLAIM<br>AND AS FRIVOLOUS** |

## I.      Procedural History

On June 4, 2018, Allen Hammler ("Plaintiff"), a state inmate incarcerated at California State Prison - Corcoran located in Corcoran, California, and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1). Plaintiff also filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a), along with a Motion for Temporary Restraining Order ("TRO").  (ECF Nos. 3, 5.)

On September 26, 2018, the Court GRANTED Plaintiff's Motion to Proceed IFP, DENIED his Motion for a TRO and sua sponte DISMISSED his Complaint for failing to

state a claim upon which relief could be granted and as frivolous.  (ECF No. 6.)  On November 13, 2018, Plaintiff filed his First Amended Complaint ("FAC").  (ECF No. 10.)

**II.    Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

**A.    Standard of Review**

As the Court previously informed Plaintiff, because he is a prisoner and is proceeding IFP, his FAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for

2

1   relief [is] ... a context-specific task that requires the reviewing court to draw on its

2   judicial experience and common sense." *Id.* The "mere possibility of misconduct" or

3   "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting

4   this plausibility standard. *Id.*

5      **B.    42 U.S.C. § 1983**

6      "Section 1983 creates a private right of action against individuals who, acting

7   under color of state law, violate federal constitutional or statutory rights." *Devereaux v.*

8   *Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of

9   substantive rights, but merely provides a method for vindicating federal rights elsewhere

10  conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks

11  and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1)

12  deprivation of a right secured by the Constitution and laws of the United States, and (2)

13  that the deprivation was committed by a person acting under color of state law." *Tsao v.*

14  *Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

15     **C.    Duplicative claims**

16     Plaintiff alleges that on July 15, 2009, he "entered into a bilateral contract with the

17  [CDCR] in which the terms of the agreement were that Plaintiff was agreeing to be

18  housed [in] a sensitive needs yard ("SNY")."  FAC at 4.  Plaintiff alleges that this

19  agreement was in exchange for "being provided an environment where he can live and

20  program free of gangs and their politics."  *Id.*  Plaintiff claims that the Director of the

21  CDCR, Scott Kernan, "in concert with co-defendants Daniel Paramo and P. Cortez have

22  breach the entered into contract via refusing to up-hold their end."  *Id.*

23     These claims are duplicative of claims that Plaintiff is already pursing in the

24  Eastern District of California.  *See Hammler v. Director of CDCR, et al.*, E.D. Civil Case

25  No. 2:17-cv-01949-MCE-DB.  A court "'may take notice of proceedings in other courts,

26  both within and without the federal judicial system, if those proceedings have a direct

27  relation to matters at issue.'" *Bias v. Moynihan,* 508 F.3d 1212, 1225 (9th Cir. 2007)

28  (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).   A prisoner's

complaint is considered frivolous if it "merely repeats pending or previously litigated claims." *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (construing former 28 U.S.C. § 1915(d)) (citations and internal quotations omitted). Therefore, because Plaintiff already filed an action with the identical claims arising from his "bilateral contract" presented in this action, the Court must dismiss the duplicative claims brought in this action pursuant to 28 U.S.C. § 1915(e) (2) & 1915A(b). *See Cato*, 70 F.3d at 1105 n.2; *Resnick*, 213 F.3d at 446 n.

### E. Retaliation claims

Throughout his FAC, Plaintiff alleges that he was retaliated against by Defendants when they issued rules violation reports ("RVR") in retaliation for Plaintiff's refusal to be housed in a yard where he believed he would not be safe. *See* FAC at 12-16. Plaintiff claims that "it is obvious that Defendant(s) misquoted him and intentionally misconstrued his assertions of his constitutional rights for retaliatory reasons." FAC at 14. Retaliation against a prisoner for exercising his rights to speech or to petition the government may violate the First Amendment. *See Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

A viable claim of retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005)).

Here, the Court finds that Plaintiff fails to plead facts sufficient to all the elements of a retaliation claim. Specifically, he fails to allege that any Defendant issued a rules violation report because he sought to exercise his constitutional rights, instead he makes clear that he was issued disciplinary reports because he refused to accept the housing he was assigned. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)

1   (retaliation claims requires a showing that Plaintiff's protected conduct was "the

2   'substantial' or 'motivating' factor behind the defendant's conduct.").

3       Plaintiff further fails to allege facts which plausibly show that the actions of

4   Defendants "would chill or silence a person of ordinary firmness from future First

5   Amendment activities," *Rhodes*, 408 F.3d at 568.  In fact, Plaintiff admits that

6   Defendants' "actions did not have a complete chilling effect", and as currently pleaded,

7   Plaintiff fails to claim that he "suffered some other harm," *Brodheim*, 584 F.3d at 1269,

8   that was "more than minimal." *Rhodes*, 408 F.3d at 568 n.11. Finally, Plaintiff fails to

9   allege that the Defendants' actions in issuing rules violation reports in response to

10  Plaintiff's rejection of their efforts to house him in the special needs yard "failed to

11  advance a legitimate goal of the correctional institution." *Rizzo*, 778 F.2d at 532.

12  Therefore, Plaintiff's retaliation claims must be dismissed for failure to state a claim upon

13  which § 1983 relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C.

14  § 1915A(b)(1).

15      **F.    Breach of Contract claim**[1]

16      Plaintiff also attempts to allege that Defendants have "breached" a contract

17  between Plaintiff and the CDCR.  *See* FAC at 27.  Plaintiff appears to attempt to allege

18  this claim as one brought under the Fourteenth Amendment but he also states that the

19  Court should "exercise supplemental jurisdiction" to view this as a state law claim.  *Id.*

20      However, because Plaintiff has failed to allege a violation of federal law, the Court

21  exercises its discretion to dismiss his pendent state law claims without prejudice. 28

22  U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction

23  over a claim under subsection (a) if– [it] has dismissed all claims over which it has

24  original jurisdiction."); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726

25  (1966) ("if the federal claims are dismissed before trial, ... the state claims should be

26

27

28  _____

[1] These claims are also identical to the ones that Plaintiff raised in *Hammler v. Director of CDCR, et al.*, E.D. Civil Case No. 2:17-cv-01949-MCE-DB.

1   dismissed as well."); *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997)

2   ("[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction

3   over state law claims under 1367(c) is discretionary.").

4   **III.   Conclusion and Order**

5           Accordingly, the Court:

6           1)      **DISMISSES** this civil action without further leave to amend for failure to

7   state a claim upon which § 1983 relief can be granted and as frivolous pursuant to 28

8   U.S.C. § 1915(e)(2)(B) and § 1915A(b);

9           2)      **CERTIFIES** that an IFP appeal would not be taken in good faith pursuant

10  to 28 U.S.C. § 1915(a)(3), and

11          3)      **DIRECTS** the Clerk of Court to enter a final judgment of dismissal and to

12  close the file.

13          **IT IS SO ORDERED**.

14   Dated:  December 10, 2018

15

16                                          Hon. Dana M. Sabraw
                                            United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT 6

**TO REQUEST FOR JUDICIAL NOTICE OF MATTERS AND RECORDS IN SUPPORT OF DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 14 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALLEN HAMMLER, | No. 20-56421 |
| Plaintiff - Appellant, | |
| v. | D.C. No. 3:18-cv-01170-DMS-NLS U.S. District Court for Southern California, San Diego |
| SCOTT KERNAN, Secretary of CDCR; et al., | **ORDER** |
| Defendants - Appellees. | |

A review of the docket demonstrates that appellant has failed to respond to the January 19, 2021 order of this court.

Pursuant to Ninth Circuit Rule 42-1, this appeal is dismissed for failure to prosecute.

This order served on the district court shall, 21 days after the date of the order, act as the mandate of this court.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Cyntharee K. Powells
Deputy Clerk
Ninth Circuit Rule 27-7

# EXHIBIT 7

**TO REQUEST FOR JUDICIAL NOTICE OF MATTERS AND RECORDS IN SUPPORT OF DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISON

ALLEN HAMMLER,

   Plaintiff,

  v.

DIRECTOR OF CDCR, et. al,

   Defendants.

Case No.  17-cv-0097-NJV (PR)

**ORDER OF DISMISSAL WITH
LEAVE TO AMEND**

Docket No. 7

   Plaintiff, a state prisoner, has filed a pro se civil rights complaint under 42 U.S.C. § 1983. He has been granted leave to proceed in forma pauperis.  (Doc. 8.)  He has also filed a motion for a temporary restraining order and preliminary injunction.

### DISCUSSION

**Standard of Review**

   Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  *Id*. at 1915A(b)(1),(2).  Pro se pleadings must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

   Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . . claim is and the grounds

1    upon which it rests.'"'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).  Although

2    in order to state a claim a complaint "does not need detailed factual allegations, . . . a plaintiff's

3    obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

4    conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .

5    Factual allegations must be enough to raise a right to relief above the speculative level." *Bell*

6    *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  A complaint must

7    proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  The United

8    States Supreme Court has recently explained the "plausible on its face" standard of *Twombly*:

9    "While legal conclusions can provide the framework of a complaint, they must be supported by

10   factual allegations.  When there are well-pleaded factual allegations, a court should assume their

11   veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*

12   *v. Iqbal*, 556 U.S. 662, 679 (2009).

13          To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements:  (1)

14   that a right secured by the Constitution or laws of the United States was violated, and (2) that the

15   alleged deprivation was committed by a person acting under the color of state law.  *West v. Atkins*,

16   487 U.S. 42, 48 (1988).

17          **Legal Claims**

18          Plaintiff seeks to stop his forced medication with psychotropic drugs.

19          The Supreme Court has recognized a liberty interest in freedom from unwanted

20   antipsychotic drugs.  *Washington v. Harper*, 494 U.S. 210, 221-22 (1990); *United States v. Ruiz-*

21   *Gaxiola*, 623 F.3d 684, 691 (9th Cir. 2010).  For convicted inmates, or those awaiting trial, the

22   "liberty interest in avoiding unwanted medication must be defined in the context of the inmate's

23   confinement." *United States v. Loughner*, 672 F.3d 731, 745 (9th Cir. 2012) (quoting *Harper*, 494

24   U.S. at 222).  If it is determined that an inmate is a danger to himself or others, and treatment in

25   his medical interest, the Due Process Clause allows the State to treat an inmate with serious mental

26   illness with antipsychotropic drugs against his will.  *Harper*, 494 U.S. at 227; cf. *Riggins v.*

27   *Nevada*, 504 U.S. 127, 135 (1992) ("forcing anti-psychotic drugs on a convicted prisoner is

28   impermissible absent a finding of overriding justification and a determination of medical

United States District Court
Northern District of California

2

appropriateness.").  In the context of *Harper* and *Riggins*, an invasion of the human person can only be justified by a determination by a neutral factfinder that the antipsychotic drugs are medically appropriate and that the circumstances justify their application.  *See Kulas v. Valdez*, 159 F.3d 453, 455-56 (9th Cir. 1998).

In addition to the substantive requirements above, the administration of antipsychotic drugs "cannot withstand challenge if there are no procedural safeguards to ensure the prisoner's interests are taken into account."  *Harper*, 494 U.S. at 233.  A prisoner must be given notice and the right to be present at and participate in a hearing.  *See Kulas*, 159 F.3d at 456.  But these procedural safeguards may not apply in an emergency situation where the prisoner poses an imminent and serious danger to himself or others.  *See id*.  A determination that an inmate can be properly involuntarily medicated due to dangerousness need not be made by a judicial decision or judicial hearing as opposed to an administrative determination.  *Loughner*, 672 F.3d at 754.  Further, the decision to forcibly medicate because of dangerousness need not meet any heightened standard of proof in order to comport with due process.  *Id*. at 756.  Nor is an inmate, medicated under the *Harper* standard, entitled to counsel at the involuntary medication hearing.  *Id*. at 756-57.

In California, the procedural requirements for involuntary medication of prisoners is set out in *Keyhea v. Rushen*, 178 Cal.App.3d 526 (Cal. Ct. App. 1986).  "A *Keyhea* order permits the long-term involuntary medication of an inmate upon a court finding that the course of involuntary medication is recommended and that the prisoner, as a result of mental disorder, is gravely disabled and incompetent to refuse medication, or is a danger to himself or others."  *Davis v. Walker*, 745 F.3d 1303, 1307 n.2 (9th Cir. 2014).

Plaintiff filed this complaint on December 24, 2016.  He states he was being pressured to take psychotropic medication.  He argues that medical staff pushed the medication because plaintiff was referred to medical staff after plaintiff made what was deemed to be paranoid statements regarding other correctional officers.  Medical staff concluded that psychotropic medication could help.  Plaintiff argues that he is of sound mind and does not need to be medicated because he has a First Amendment right to make allegations against prison staff.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    Plaintiff is worried about the side effects of the medication.  Based on the allegations in the

2    complaint it does not appear that plaintiff had been forcibly medicated as he stated he was

3    threatened with forcible medication if he did not sign a consent form.

4         However, plaintiff filed a motion for a temporary restraining order and preliminary

5    injunction on January 24, 2017.  He states that the forcible medication started on December 24,

6    2016.  He contends that the medication has adversely affected his physical ability to move around

7    and his mental ability to adequately litigate several other civil rights cases.  Yet, plaintiff does not

8    describe any of the procedures that were or were not used before the forcible medication.  The

9    complaint is dismissed with leave to amend to provide more information.  Plaintiff should provide

10   a clearer narrative on when events occurred and he should describe the procedures of the forced

11   medication and if a *Keyhea* hearing was held.

12        Moreover, plaintiff states that he commenced the inmate grievance process, but it is not

13   completed.  A prisoner must exhaust his administrative remedies for constitutional claims prior to

14   asserting them in a civil rights complaint.  42 U.S.C. § 1997e(a); *McKinney v. Carey*, 311 F.3d

15   1198, 1199 (9th Cir. 2002).  If a prisoner exhausts a claim after bringing it before the court, his

16   subsequent exhaustion cannot excuse his earlier failure to exhaust.  *Vaden v. Summerhill*, 449 F.3d

17   1047, 1051 (9th Cir. 2006) ("[A prisoner] may initiate litigation in federal court only after the

18   administrative process ends and leaves his grievances unredressed.  It would be inconsistent with

19   the objectives of the statute to let him submit his complaint any earlier than that.").  When the

20   district court concludes that the prisoner has not exhausted administrative remedies on a claim,

21   "the proper remedy is dismissal of the claim without prejudice."  *Wyatt v. Terhune*, 315 F.3d,

22   1108, 1120 (9th Cir. 2003) *overruled on other grounds*.

23        In an amended complaint, plaintiff should provide more information regarding exhaustion.

24   If this action continues and is not exhausted until a later date, defendants could file a motion to

25   dismiss for failure to exhaust which would delay speedy resolution of plaintiff's claims.

26        Plaintiff also seeks a temporary restraining order and a preliminary junction.  Federal Rule

27   of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction or

28   temporary restraining order ("TRO").  Prior to granting a preliminary injunction, notice to the

4

1  adverse party is required.  *See* Fed. R. Civ. P. 65(a)(1).  Therefore, a motion for preliminary

2  injunction cannot be decided until the parties to the action are served.  *See Zepeda v. INS*, 753 F.2d

3  719, 727 (9th Cir. 1983).  A TRO may be granted without written or oral notice to the adverse

4  party or that party's attorney only if: (1) it clearly appears from specific facts shown by affidavit

5  or by the verified complaint that immediate and irreparable injury, loss or damage will result to the

6  applicant before the adverse party or the party's attorney can be heard in opposition, and (2) the

7  applicant's attorney certifies in writing the efforts, if any, which have been made to give notice

8  and the reasons supporting the claim that notice should not be required.  *See* Fed. R. Civ. P. 65(b).

9        Plaintiff has failed to meet his burden to show that it clearly appears from specific facts

10  shown that immediate and irreparable injury will result to plaintiff before defendant can be served.

11  It is also not clear at this early stage if plaintiff has exhausted his claim or if he has even presented

12  a cognizable claim.  The motion is dismissed without prejudice.  If the claim is exhausted and the

13  case continues beyond service, plaintiff may file an amended motion.

**CONCLUSION**

15        1.  The motion for a temporary restraining order and preliminary injunction (Docket No. 7)

16  is **DENIED** without prejudice for the reasons set forth above.

17        2.  The complaint is **DISMISSED** with leave to amend in accordance with the standards

18  set forth above.  The amended complaint must be filed within **twenty-eight (28) days** of the date

19  this order is filed and must include the caption and civil case number used in this order and the

20  words AMENDED COMPLAINT on the first page.  Because an amended complaint completely

21  replaces the original complaint, plaintiff must include in it all the claims he wishes to present.  *See*

22  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  He may not incorporate material from

23  the original complaint by reference.  Failure to amend within the designated time will result in the

24  dismissal of this case.

25        3.  It is the plaintiff's responsibility to prosecute this case.  Plaintiff must keep the court

26  informed of any change of address by filing a separate paper with the clerk headed "Notice of

27  Change of Address," and must comply with the court's orders in a timely fashion.  Failure to do so

28  may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil

United States District Court
Northern District of California

1    Procedure 41(b).

2         **IT IS SO ORDERED.**

3    Dated: March 2, 2017

4                                        _____

5                                        NANDOR J. VADAS
                                         United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

6

1
2
3
4                           UNITED STATES DISTRICT COURT
5                          NORTHERN DISTRICT OF CALIFORNIA
6                                  EUREKA DIVISION
7
8    ALLEN HAMMLER,                              Case No.17-cv-00097-NJV
9              Plaintiff,
10        v.                                     **CERTIFICATE OF SERVICE**
11   DIRECTOR OF CDCR, et al.,
12             Defendants.
13
14        I, the undersigned, hereby certify that I am an employee of the U.S. District Court,
     Northern District of California.
15
16        On 3/2/2017, I SERVED a true and correct copy(ies) of the attached, by placing said
     copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
17   said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle
     located in the Clerk's office.
18
19        Allen  Hammler ID: F-73072
          Salinas Valley State Prison C6, A-103
20        P.O. Box 1050
          Soledad, CA 93960
21
22
23   Dated: 3/2/2017
24
                                                 Susan Y. Soong
25                                               Clerk, United States District Court
                                                 By:_____
26                                               Linn Van Meter, Law Clerk to the
                                                 Honorable NANDOR J. VADAS
27
28

United States District Court
Northern District of California

# EXHIBIT 8

**TO REQUEST FOR JUDICIAL NOTICE OF MATTERS AND RECORDS IN SUPPORT OF
DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS**

1
2
3
4                         UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6                                EUREKA DIVISON
7
8     ALLEN HAMMLER,                         Case No.  17-cv-0097-NJV (PR)
                Plaintiff,
9                                            **ORDER OF DISMISSAL**
           v.
10
      DIRECTOR OF CDCR, et. al,
11
                Defendants.
12
13
14        This is a civil rights case filed pro se by a state prisoner.  In an order entered March 2,

15    2017, the court explained the deficiencies of the complaint and then dismissed the complaint with

16    leave to amend.  The twenty-eight days to amend have passed and plaintiff has not filed an

17    amended complaint or otherwise communicated with the court.  This case is therefore

18    **DISMISSED** without prejudice for the reasons set forth in the prior order.

19        **IT IS SO ORDERED.**

20    Dated:  April 27, 2017

21        _____
22        NANDOR J. VADAS
          United States Magistrate Judge
23
24
25
26
27
28

United States District Court
Northern District of California